USDC IN/ND case 1:21-cv-00379-TLS-SLC   document 6   filed 08/19/21   page 1 of 5

02D01-2108-CT-000440
Allen Superior Court

Filed: 8/19/2021 10:18 AM
Clerk
Allen County, Indiana
JS

| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | IN THE ALLEN SUPERIOR COURT |
| | ) | SS: | |
| COUNTY OF ALLEN | ) | | CAUSE NO._____ |

GAVIN MELNKOVIC,              )
                              )
       Plaintiff,             )
                              )
v.                            )
                              )
AUTO HANDLING, LLC, d/b/a     )
JACK COOPER TRANSPORT,        )
                              )
       Defendant.             )

# COMPLAINT

Plaintiff alleges against Defendant that:

1. The Plaintiff is Gavin Melnkovic, a resident of Allen County Indiana who worked for Defendant from November of 2020 through January 14, 2021, at which time Defendant terminated Plaintiff for being injured on the job and receiving Worker's Compensation benefits (including medical care) which is contrary to the tort laws and public policies of the State of Indiana.

2. The Defendant is Auto Handling, LLC, d/b/a Jack Cooper Transport, a corporation authorized to do business in the State of Indiana and does so at 12502 Fogwell Parkway, Roanoke, Indiana 46783.

3. Defendant is obligated to carry Worker's Compensation insurance for its employees, and Plaintiff was included within the class of employees that Defendant was obligated to provide Worker's Compensation benefits to as required by the Indiana Worker's Compensation Act.

4. On or about January 9, 2021, Plaintiff went into work. Sometime between the hours of 7:30 p.m. and 9:00 p.m., Plaintiff suddenly experienced aggravation to his left knee which starting hurting. By 11:00 p.m., Plaintiff's knee was hurting so badly that he could barely walk or move. Plaintiff severely limped through the last hour of his shift.

5. Upon finishing the task of "loading the rail" around midnight that evening, Plaintiff went into the building to find his supervisor to report his knee injury. Plaintiff told "Gary" that he needed to have the next day off to have his knee checked out to make sure nothing was wrong.

6. For the next two days following that shift (January 10 and 11, 2021), Plaintiff continued receiving phone calls from Managers Brad and Arturo who asked Plaintiff to come in for shifts, and Plaintiff told him that he had sustained a knee injury while on the job.

7. On Sunday, January 10, 2021, Plaintiff went to the Emergency Room at Dupont Hospital, as OrthoStat was closed, and the ER doctor told Plaintiff that he could not run an MRI since it was not considered an emergency, but advised Plaintiff to follow-up with OrthoStat the following day.

8. On Monday, January 11, 2021, Plaintiff went to Orthostat first thing in the morning. A medical provider evaluated the knee and told Plaintiff that she strongly suspected a lateral meniscus tear, but could not be certain without MRI imaging. Plaintiff then got a steroid injection in his knee and received a referral for physical therapy. The medical provider advised Plaintiff to stay off work through Wednesday, January 13, 2021, and that Plaintiff could only return to work if his knee was feeling well enough.

9. After finishing up his appointment at OrthoStat, Plaintiff called Defendant's Yard

Supervisor, Shannon, and notified Shannon of what the doctor at OrthoStat had told him. Shannon asked Plaintiff if he had filled out an accident report the night of the injury, and Plaintiff indicated that he had not, but that he did report it. Shannon told Plaintiff to go to Jack Cooper that day and fill out an accident report, because the matter was not considered a Workman's Comp claim, so Plaintiff went to Jack Cooper on Tuesday, January 12, 2021 to fill out the accident report indicating that he was injured at work.

10. That same day, January 12, 2021, Defendant sent Plaintiff to Parkview Occupational Health to see the Worker's Compensation doctor. The doctor gave Plaintiff a knee brace to wear, put Plaintiff on light-duty work restrictions and set a 1-week follow-up appointment.

11. Plaintiff's Union Steward told Plaintiff that if a Workman's Comp claim got filed, then Plaintiff would be terminated, because he was considered a "casual" employee.

12. On January 19, 2021, Plaintiff went back to Parkview Occupational Health to follow-up with the Worker's Compensation doctor. This doctor ordered an MRI since Plaintiff was in a great deal of pain. This doctor also placed Plaintiff on full restrictions until the MRI could be completed.

13. On January 22, 2021, Plaintiff received a telephone call from Jack Cooper's insurance provider saying they wanted to offer Plaintiff a one-time, untaxed payment of $5,000.00 in order for Plaintiff to drop the Worker's Compensation claim. Plaintiff then contacted a Worker's Compensation attorney, Ed Walker with Finderson Law.

14. The last communication that Plaintiff heard from Jack Cooper was on January 14, 2021,

and at that time, Shannon (Yard Manager) told Plaintiff that his pay was loaded onto his pay card and that Plaintiff should call if he had any questions. Shannon stated that it was Jack Cooper policy that during a Worker's Compensation claim, the company paid the wages that the employee was currently owed. Plaintiff then asked if he was terminated, but Shannon said she couldn't comment any further on that issue.

15. Plaintiff had not heard from Jack Cooper for some time, so on February 25, 2021, Plaintiff called his Union Hall to check on his dues, and the Union Hall Receptionist told Plaintiff that it was confirmed he was no longer an employee with Jack Cooper. Plaintiff believed that he was terminated, and that his termination was the result of retaliation by Defendant for being injured on the job and asserting his right to Worker's Compensation benefits, including medical care, in violation of the tort laws and public policies of the State of Indiana.

16. Plaintiff has been harmed and injured as a result of Defendant's retaliatory termination, including the loss of his job and job-related benefits including income. Plaintiff has suffered, and will continue to suffer, from physical pain, mental anguish, emotional distress, humiliation, embarrassment, inconvenience, delays in medical treatment and other damages and injuries for which Plaintiff seeks compensatory damages.

17. The retaliatory termination of the Plaintiff was intentional and in reckless disregard of Plaintiff's right to be free from retaliatory discharge authorized by Indiana Statute, and therefore, Plaintiff seeks punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for compensatory damages, punitive damages, costs of the action, and for all other just and proper relief in the

premises.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/Christopher C. Myers
Christopher C. Myers, #10043-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
Telephone: (260) 424-0600
Facsimile: (260) 424-0712
E-mail: cmyers@myers-law.com
Counsel for Plaintiff